**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | ) ) ) | |
| **Plaintiff,** | ) ) | **Case No.  1:26-cv-01275** |
| **v.** | ) ) | **COMPLAINT** |
| | ) | **AND JURY TRIAL DEMAND** |
| **HATCH TRICK, INC.,** | ) ) | |
| **Defendant.** | ) ) | |

**NATURE OF THE ACTION**

This is an action under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of religion and to provide appropriate relief to Charging Party Laurel F. Torode (née Thomas), who was adversely affected by such practices. As alleged with greater particularity below, the U.S. Equal Employment Opportunity Commission alleges that Defendant Hatch Trick, Inc. subjected Torode to unlawful denial of reasonable accommodation of her religion and termination from her employment because of her religion and the unlawful denial of reasonable accommodation in violation of Title VII.

**JURISDICTION AND VENUE**

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) & (f)(3), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

1

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of Texas.

**PARTIES**

3.      Plaintiff, the U.S. Equal Employment Opportunity Commission (the "Commission" or "EEOC"), is the Agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) & (f)(3).

4.      At all relevant times, Defendant Hatch Trick, Inc., a Texas Corporation (hereinafter "Defendant"), has continuously been doing business in the State of Texas and City of Austin and has continuously employed at least 15 employees.

5.      At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e(b), (g), & (h).

6.      Throughout calendar years 2023 and 2024, Defendant continuously employed more than 100 employees.

**CONDITIONS PRECEDENT**

7.      More than thirty (30) days prior to the institution of this lawsuit, Charging Party Laurel Torode filed a charge of discrimination with the Commission, EEOC Charge No. 451-2024-02200, alleging that Defendant violated Title VII.

8.      On July 17, 2025, the Commission issued to Defendant an administrative Determination finding reasonable cause to believe that Defendant violated Title VII with respect to Torode by, among other practices, (a) denying her reasonable accommodation of her religion and (b) terminating her employment because of religion. The Commission's administrative Determination

also invited Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

9.    The Commission engaged in communications with Defendant to provide Defendant with the opportunity to remedy the discriminatory practices described in the administrative Determination by informing Defendant of the remedies sought by the Commission.

10.    The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

11.    On August 26, 2025, the Commission issued to Defendant a Notice of Failure of Conciliation.

12.    All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

13.    Since at least February 2024, Defendant has engaged in unlawful employment practices at its locations in Austin, Texas in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1).

### Count One: Denial of Reasonable Accommodation of Religion

14.    Torode held the position of Fleet Supervisor at Defendant's Braker Lane Chick-fil-A franchise location in Austin, Texas from September 2023 until her termination on or about February 23, 2024.

15.    As a Fleet Supervisor, Torode supervised a team of delivery drivers and was primarily responsible for hiring fleet drivers, onboarding them, creating driver schedules, and dispatching drivers.

16.    When Torode was not physically present to dispatch drivers, the company used a software application to automatically dispatch drivers to orders and deliveries.

17.    Defendant's Braker Lane Chick-fil-A location is open Monday through Saturday, from 6:00 a.m. to 11:00 p.m. The location is closed on Sundays in accordance with requirements of Defendant's franchisor, Chick-fil-A, Inc.

18.    Torode is an adherent of the United Church of God, a religious faith she sincerely held at all relevant times, including throughout the course of her employment by Defendant.

19.    At all relevant times, including throughout the course of her employment by Defendant, Torode has sincerely held a religious belief and practice that she is not permitted to work on Saturdays, her religious Sabbath, which commences at sundown every Friday and ends at sundown every Saturday.

20.    On multiple occasions prior to her termination, Torode informed Defendant of her religious identity and her sincerely held religious belief and practice that she cannot work on the Sabbath observed by adherents of the United Church of God.

21.    During her job interview for the Fleet Supervisor position in August 2023, Torode told Defendant's Braker Lane Restaurant Director Faye Campbell and its Parmer Lane Restaurant Director Jeremy Jenkins about her religious belief and practice of refraining from work on Saturday in observance of the Sabbath, and she stated her need for a reasonable accommodation of that belief and practice.

22.    Torode worked Monday through Friday, with some additional work on Sundays, totaling 45-50 hours per week. She was paid on an hourly basis, and as a manager, Defendant scheduled her to work mandatory overtime.

23.    Between the start of her employment in September 2023 until approximately February 2024, Defendant did not schedule Torode to work on Saturdays based on its knowledge of her Sabbath observance.

24.    Between the start of her employment in September 2023 until approximately February 2024, Defendant did not communicate to Torode any disagreement with, or concerns about, not scheduling her to work on Saturdays or her practice of refraining from work on Saturdays in religious observance of her Sabbath.

25.    In early February 2024, Defendant told Torode that going forward it would require her to work on Saturdays, to include the period in which she observes the Sabbath.

26.    In response to the mandated schedule change, in February 2024, Torode submitted a written request for a reasonable accommodation of her religion.

27.    On or about February 9, 2024, Torode met in-person with Defendant's Restaurant Directors Faye Campbell and Jeremy Jenkins to discuss her need for reasonable accommodation in the form of not being scheduled to work during her Sabbath observance.

28.    During Torode's February 9, 2024 meeting with Campbell and Jenkins (hereinafter referenced as "the February 9 meeting"), those two managers did not agree to exempt Torode from work during her Saturday Sabbath observance.

29.     During the February 9 meeting, Campbell and Jenkins declined to agree to scheduling suggestions that Torode made, which included having other managers cover dispatching on Saturdays, having a driver cover dispatching on Saturdays, and having her work a partial shift on Saturdays after her Sabbath had concluded.

30.    During the February 9 meeting, Defendant, acting through Campbell and Jenkins, told Torode that in order to avoid being scheduled to work on Saturdays during the period of her Sabbath observance, she would be required to accept a non-managerial fleet driver position.

31.    The duties and responsibilities of Defendant's fleet driver position include non-managerial, manual labor tasks such as delivering food and automotive maintenance. The driver

position was performed primarily while driving a vehicle or outdoors, including in inclement weather.

32.     At all relevant times, such fleet drivers were paid $12.00 per hour plus tips that varied in amount based on the volume of deliveries and the discretion of customers.

33.     At all relevant times, the Fleet Supervisor position was paid $23.00 per hour with guaranteed overtime paid at the time-and-a-half rate.

34.     During the February 9 meeting, Torode declined to move from her Fleet Supervisor position to a non-managerial fleet driver position.

35.     On or about February 23, 2024, Torode met with Defendant's owner, Jeff Glover, along with Restaurant Director Campbell and Defendant's Business Director Joe Thomson, to discuss her request to refrain from working on Saturdays during the period of her Sabbath observance as a reasonable accommodation of her religion.

36.     During the February 23, 2024 meeting between Torode, Glover, Campbell and Thomson (hereinafter referenced as "the February 23 meeting"), Torode requested that Defendant continue to allow her to not work during the period of her Sabbath observance and reiterating her beliefs.

37.     During the February 23 meeting, Torode declined to accept Defendant's proposal to move her to a fleet driver position, and she explained that such a move would be a demotion and that she would be paid less, would receive fewer benefits, and would no longer be a management official.

38.     During the February 23 meeting, in an attempt to have an interactive dialogue with Defendant about her reasonable accommodation request and find an acceptable resolution, Torode proposed a number of feasible reasonable accommodations in addition to exemption from Saturday Sabbath work that would have enabled her to retain her managerial position as a Fleet Supervisor

while not requiring her to work during her Sabbath observance, including teaching restaurant team leads to dispatch, adding a delivery team lead, having a driver work in the dispatch role on Saturdays, and allowing Torode to work only after sundown on Saturdays.

39. Defendant, acting through Glover, declined to accept any of Torode's proposals for reasonable accommodation that she made at the February 23 meeting. Defendant, acting through Glover, did not offer any alternative proposals beyond re-iterating that Torode should move to a non-managerial fleet driver position.

40. Defendant did not make any proposals during February 2024 or any time thereafter to enable Torode to refrain from work during her Sabbath observance while remaining in her position as Fleet Supervisor.

41. At no time during February 2024 or any time thereafter did Defendant ever offer to exempt Torode from work during her Sabbath observance while allowing her to continue in her position as Fleet Supervisor.

42. Defendant declined to exchange ideas with Torode about, and did not evaluate, any options for accommodation of Torode's religion other than moving her to a non-managerial fleet driver position.

43. Commencing on or about February 2024 and continuing until the end of her employment, Defendant failed to provide Torode with a reasonable accommodation of her religion.

44. The effect of the practices complained of in paragraphs 13-43, above, has been to deprive Torode of equal employment opportunities and otherwise adversely affect her status as an employee because of her religion.

45. The unlawful employment practices complained of in paragraphs 13-43, above, were and are intentional.

46.    The unlawful employment practices complained of in paragraphs 13-43, above, were and are done with malice or with reckless indifference to the federally protected rights of Torode.

### Count Two: Termination Because of Religion

47.    EEOC incorporates by reference all allegations set forth in paragraphs 13-46, above.

48.    On or about February 27, 2024, Defendant terminated Torode's employment.

49.    Defendant terminated Torode's employment as a result of its unlawful denial of her request for reasonable accommodation of her religion.

50.    Defendant terminated Torode's employment because of her sincerely held religious belief and practice that she refrain from work on Saturdays during her Sabbath observance and her stated unwillingness to accept Defendant's sole proposal that she be moved to a non-managerial fleet driver position to accommodate her belief and practice.

51.    The effect of the practices complained of in paragraphs 13-50, above, has been to deprive Torode of equal employment opportunities and otherwise adversely affect her status as an employee because of her religion.

52.    The unlawful employment practices complained of in paragraphs 13-50, above, were and are intentional.

53.    The unlawful employment practices complained of in paragraphs 13-50, above, were and are done with malice or with reckless indifference to the federally protected rights of Torode.

### PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.    Grant a permanent injunction enjoining and restraining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in

religious discrimination, including denial of reasonable accommodation of religion and any other employment practice which discriminates on the basis of religion.

B.      Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for persons with sincerely held religious beliefs, practices, and observances that require accommodation, and which eradicate the effects of its past and present unlawful employment practices.

C.      Order Defendant to make whole Laurel Torode by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement with retroactive seniority and benefits and front pay in lieu thereof.

D.      Order Defendant to make whole Laurel Torode by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 13-51, above, in amounts to be determined at trial.

E.      Order Defendant to make whole Laurel Torode by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of in paragraphs 13-53, above, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, in amounts to be determined at trial.

F.      Order Defendant to pay Laurel Torode punitive damages for the malicious and reckless conduct described in paragraphs 13-53, above, in amounts to be determined at trial.

G.      Grant such further relief as the Court deems necessary and proper in the public interest.

H.      Award the Commission its costs of this action.

9

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

CATHERINE L. ESCHBACH
ACTING GENERAL COUNSEL

CHRISTOPHER LAGE
DEPUTY GENERAL COUNSEL

131 M STREET, NE
WASHINGTON, D.C. 20507

*/s/ Ronald L. Phillips s.w.p.*
RONALD L. PHILLIPS
ACTING REGIONAL ATTORNEY

*/s/ Philip J. Moss*
PHILIP J. MOSS
SENIOR TRIAL ATTORNEY
Texas State Bar No. 24074764
philip.moss@eeoc.gov

**U.S. Equal Employment
Opportunity Commission**
San Antonio Field Office
5410 Fredericksburg Road, Ste. 200
San Antonio, Texas 78229
Telephone: (210) 640-7570

**ATTORNEYS FOR PLAINTIFF**

10